UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20418-CIV-MCALILEY

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MILAGROS ESPINAL,

    Defendant.
_____/

# ORDER GRANTING THE UNITED STATES' MOTION FOR CONTEMPT

The United States filed a Motion to Find Milagros Espinal in Contempt (the "Motion"). (ECF No. 22).[1] Espinal filed a response memorandum. (ECF No. 26). With the agreement of the parties, the Court bifurcated its adjudication of liability and possible penalties.[2]

On April 15, 2021, the Court held an evidentiary hearing on liability, and with the parties' consent did so via Zoom videoconferencing. At the conclusion of that hearing the Court advised the parties that it found that the United States had carried its burden of proof to prove that Espinal is in contempt of this Court's Consent Judgment of Permanent

---

[1] The Motion initially asked the Court to also find Walrogen Estevez and Swole Association LLC in contempt. (*Id.*). Consistent with the stipulation of the parties, the Court discharged those defendants from this proceeding. (ECF Nos. 32, 33).

[2] The parties consented to me as the presiding judicial officer, and the Honorable Donald L. Graham referred the case to me for all further proceedings. (ECF Nos. 21, 24).

Injunction, entered on February 16, 2011. (ECF No. 3). The Court invited the United States to submit proposed findings of fact and conclusions of law, which it did. (ECF No. 46). Defendant chose not to file a response to those proposals, or to file her own proposed findings and conclusions.

As set forth here, the Court **GRANTS** the United States' Motion on the question of liability and makes the following findings of fact and conclusions of law.

## I. Findings of Fact

### A. Espinal violated the Court's injunction

1. In February 2011, the United States filed this action to permanently enjoin Espinal from, *inter alia*, preparing tax returns. The Complaint alleged that Espinal prepared tax returns for customers that claimed false or overstated deductions for medical expenses, charitable contributions, and unreimbursed employee business expenses. (ECF No. 1 ¶ 15). It further alleged that an IRS review of returns she prepared uncovered errors in 97% of the returns it examined. (*Id.* ¶ 10).

2. The United States attached to its Complaint a proposed consent order, signed by both government counsel and Espinal. (ECF No. 1-2). Without admitting or denying the allegations in the Complaint, Espinal agreed to a full bar on tax return preparation. (*Id.*).

3. On February 17, 2011, the Court entered the Consent Judgment of Permanent Injunction as an order of this Court. (ECF No. 3). It prohibits Espinal from directly or indirectly (a) preparing or assisting in the preparation of any other person's federal income tax returns or other related documents and forms for others; (b) preparing or assisting in the preparation of federal tax returns that she knows will result in the understatement of

any tax liability or the overstatement of federal tax refunds; (c) providing any tax advice or services for compensation, including preparing or filing returns, providing consultative services, or representing customers; (d) engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, or 6701; or (e) engaging in any conduct that interferes with the proper administration and enforcement of the internal revenue laws. (*Id.*).

4. Years later, on December 29, 2020, the United States moved for an order to show cause why Espinal should not be held in contempt. (ECF No. 4). The Motion reported that a Department of Justice investigation uncovered evidence that, for years, Espinal had been violating the injunction. (*Id.*). The Court issued an order to show cause and scheduled an evidentiary hearing. (ECF No. 19).

5. On April 15, 2021, the Court conducted an evidentiary hearing via Zoom videoconferencing and heard testimony from 10 witnesses.

6. During the hearing, I presided over a virtual courtroom in which the attorneys for each party, Espinal, an IRS agent who was the United States' party representative, the court reporter, and an interpreter were present throughout the hearing. I sequestered the witnesses in a virtual waiting room and admitted them into the virtual courtroom when it was their turn to testify.

7. While testifying, each witness could see everyone else in the virtual courtroom by video. Each participant appeared in a separate box on Zoom. The individual boxes were arranged in a grid on the screen.

8. For the entirety of the hearing, Espinal was on camera in a room by herself. Her attorney, who was not seated next to her, appeared separately on screen.

9. Zoom participants can select the name that appears on screen to identify them. The box that displayed an image of each participant had their chosen name at the bottom on the box. At the beginning of the hearing, Espinal's name appeared in the box with her image. Tr. 59:18-21.[3]

10. Prior to the testimony of the third witness, Espinal changed her name on Zoom to "NA." *Id.* At one point in the hearing, Espinal changed her name to "M," only to switch it back again to "NA." *Id.* at 132:24–133:7. She removed her name so that witnesses, who were asked to identify her, would not be aided in their identification by a display of her name.

11. All witnesses testified that Espinal prepared their tax returns in the years after the Court issued the injunction. Nine of those witnesses recognized Espinal on their screens and identified her as their return preparer. *Id.* at 17:25–18:7; 41:14-19; 61:12-24; 81:24–86:3; 97:5-15; 116:11-23; 140:20–141:7; 159:7-16; 172:1-19.

12. The one witness who did not identify Espinal, testified that she used the same tax return preparer as her husband. *Id.* at 136:1-18. Her husband, in turn, identified Espinal. *Id.* at 116:11-23.

13. Espinal objected that the circumstances of the witnesses' identification of her on Zoom were suggestive and thus not reliable, and she argued that the Court should credit only identifications made in the neutral circumstances of a line-up or photo array. The Court overruled that objection. The identifications of Espinal (especially once she removed

---

[3] Citations to the transcript of the April 15, 2021 contempt hearing, which was filed at ECF No. 47, are in the form "Tr. #."

her name from her screen) were comparable to those that witnesses make in a courtroom, which are far more suggestive than a line-up or photo array; given that parties are typically seated next to their attorney. The Court was able to consider all the circumstances of the identifications, to include the identification of Espinal by multiple witnesses, and that the witness testimony was generally corroborative of their identifications of Espinal. The Court credits those identifications and finds that Espinal prepared the witnesses' tax returns in violation of the Consent Order of Permanent Injunction, as set out below.

14. The Court found all 10 witnesses credible, based both on their demeanor and the content of their testimony.

15. The consistency of the witnesses' recollections of their encounters with Espinal added to their credibility. Some examples are:

   A. The witnesses consistently described meeting with Espinal at an office in Hialeah, Florida, or a home in the Miami/Hialeah area. *Id.* at 19:1-4; 41:21-24; 62:1-8; 86:5-7; 97:17-18; 117:2-4; 141:9-12; 155:15-16; 172:21-25.

   B. The witnesses frequently described Espinal as being assisted by her son or grandson. *Id.* at 21:2-7; 144:7-8; 152:8-10; 173:5-7; 181:15-16; 183:16-18.

   C. Many of the witnesses gave similar accounts of waiting for a long time, after their arrival, to meet with Espinal, or seeing other customers having to wait for their return to be prepared. *Id.* at 19:5-13; 62:13-15; 91:3-4; 97:19-22; 98:3-5; 142:9-12; 146:3-6; 173:8-12.

16. The witnesses' credibility was enhanced by their frank testimony against their own interests, that their tax returns included false information.

17. The often identical, or nearly identical, fraudulent fuel tax credits claimed on the witnesses' returns is strong circumstantial evidence that Espinal prepared those returns.

18. The fuel tax credit is available to taxpayers who operate farm equipment or other off-highway business equipment or vehicles. Off-highway business use is any use of fuel in a trade or business or in an income-producing activity where the equipment or vehicle is not registered and not required to be registered for use on public highways, which include all federal, state, county, and city roads and streets. *See* Publication 225 at 86, IRS, *available at* https://www.irs.gov/pub/irs-pdf/p225.pdf.

19. IRS Publication 225 provides the following examples of qualifying off-highway fuel use: (1) in stationary machines such as generators, compressors, power saws, and similar equipment; (2) for cleaning; and (3) in forklift trucks, bulldozers, and earthmovers. *Id.* Because of its extremely limited availability and because of widespread abuse, the IRS included the fuel tax credit on its 2019 list of the "dirty dozen" scams. *See IRS concludes "Dirty Dozen" list of tax scams for 2019: Agency encourages taxpayers to remain vigilant year-round*, IRS (Mar. 20, 2019), *available at* https://www.irs.gov/newsroom/irs-concludes-dirty-dozen-list-of-tax-scams-for-2019-agency-encourages-taxpayers-to-remain-vigilant-year-round. The IRS noted that it is a "tax benefit generally not available to most taxpayers." *Id.*

20. All 10 witnesses had fraudulent fuel tax credits on their returns. Tr. at 22:23–23:11; 45:17–46:4; 66:3-15; 88:12–90:5; 99:19–100:13; 121:7-14; 127:2-11; 137:4–138:4; 144:16-25; 146:11–147:14; 161:2-12; 174:20-25; 177:11-23.

21. All the returns claimed that the customers purchased precisely 5,988 or 6,988 gallons of fuel for a qualifying purpose.

22. For the following customers in the following tax years, the returns claimed exactly 5,988 gallons for a fuel tax credit of $1,096:

   a. Carlos Silveira Mendoza, 2019 (ECF No. 22-25 at 12);[4]

   b. Jean Albert Gallego, 2018 (ECF No. 22-10 at 38–41) and 2017 (ECF No. 22-10 at 23–26);

   c. Diana Izquierdo, 2016 (ECF No. 22-9 at 6–9), 2017 (ECF No. 22-9 at 19–22), and 2018 (ECF No. 22-9 at 36–39);

   d. Olaf Pozo Lorenzo, 2017 (ECF No. 22-23 at 6);

   e. Francisco Flores, 2018 (ECF No. 22-26 at 6);

   f. Gueidy Antigua, 2018 (ECF No. 22-33 at 6);

   g. Naeleen Rosario, 2018 (ECF No. 22-34 at 6); and

   h. Lina Maria Gallego, 2016 (ECF No. 22-11 at 6–9), 2017 (ECF No. 22-11 at 21–24), and 2018 (ECF No. 22-11 at 45–48).

23. For the following customers in the following tax years, the returns claimed exactly 6,988 gallons for a fuel tax credit of $1,279:

   a. Carlos Silveira Mendoza, 2018 (ECF No. 22-25 at 6);

   b. Angie Amaya, 2018 (ECF No. 22-37 at 6); and

---

[4] Prior to the hearing, the parties stipulated to the authenticity and admissibility of all of the United States' exhibits attached to ECF No. 22. (ECF No. 27). As a result, the exhibits were received into evidence at the hearing.

      c.   Maria Isabel Lara, 2017 (ECF No. 22-12 at 5–8).

24. Espinal's claim, on her personal tax returns, of the same fuel tax credit, is significant circumstantial evidence that she was involved in the preparation of the witnesses' false tax returns. On returns she prepared for herself for tax years 2014, 2015 and 2016, Espinal claimed a $1,096 fuel tax credit and that she purchased 5,988 gallons of fuel each year for a qualifying purpose. (ECF No. 22-30 at 3); (ECF No. 22-31 at 3); (ECF No. 22-32 at 3).

25. Another link between Espinal and the witnesses is the "ghost" preparation of the witnesses' returns.

26. Individuals who prepare but do not sign returns are known as "ghost" preparers. Section 6109 of the Internal Revenue Code requires paid return preparers to identify themselves on the returns they prepare for customers by including their preparer tax identification number ("PTIN") on the return. Under 26 U.S.C. §§ 6695(b) and 6695(c), the IRS can assess penalties against return preparers who do not comply with the requirements of 26 U.S.C. § 6109. In addition, a court can enjoin a return preparer who continually engages in conduct subject to penalty under § 6695 from preparing returns for others. *See* 26 U.S.C. § 7407.

27. All 10 witnesses testified that they paid Espinal to prepare their returns. Tr. at 20:21-24, 42:17-20, 63:18–64:2, 87:13-16, 98:19-22, 117:23–118:1, 123:7-10, 137:1-3, 142:2-8, 145:21–146:2, 160:11-16, 174:9-16. Espinal did not sign those returns. Tr. at 42:11-16, 63:12-15, 87:9-10, 98:15-16, 118:24–119:1, 123:17-18, 143:23-24, 174:5-8; (ECF No. 22-10 at 5, 20, 32); (ECF No. 22-9 at 3, 17, 30); (ECF No. 22-11 at 2, 19, 40);

(ECF No. 22-12 at 2); (ECF No. 22-2 ¶ 6). Instead, the witnesses submitted them to the IRS under the pretense that they prepared their own tax returns. Tr. at 63:9-11, 87:5-8, 94:16-23, 98:11-14, 119:4-5, 123:3-6, 124:6-8, 145:1-6, 146:7-10, 174:1-4; (ECF No. 22-2 ¶ 6). The witnesses testified consistently that Espinal did not sign or file their returns and that she instead directed them to sign the returns themselves and mail them to the IRS. Tr. at 63:9-11, 87:5-8, 94:16-23, 98:11-14, 119:4-5, 123:3-6, 124:6-8, 145:1-6, 146:7-10, 174:1-4.

28.    Espinal had a motive to avoid signing the returns – that is, if she filed returns that identified her as the preparer, she would acknowledge to the IRS her noncompliance with the permanent injunction.

29.    The witnesses' testimony is also corroborated by sworn testimony Espinal gave in a 2019 deposition in an unrelated lawsuit: *In re Estate of Luis Felipe Cainas*, No. 2019-694-CP-02 (Fla. 11th Cir. Ct.). At the deposition, Espinal identified her profession as, "What I do is income tax, taxes." (ECF No. 22-1 at 17:19-20).

30.    Espinal's involvement in the preparation of the witnesses' tax returns went beyond her merely helping or answering questions. Several witnesses testified that they sat next to or across from Espinal as she prepared their returns on a computer. Tr. at 42:3-4, 91:22, 94:4-15, 132:9-11, 180:11-15, 184:22–185:3.

31.    In sum, clear and convincing evidence demonstrates that Espinal prepared the witnesses' tax returns after the Court entered the Permanent Injunction. Espinal provided no evidence to suggest otherwise.

### B. Espinal had notice of the injunction and was able to comprehend its terms

32. Espinal had actual notice of the injunction at all relevant times.

33. Espinal signed the Consent Judgment to indicate her consent to the permanent injunction. *See* (ECF No. 3 at 4). She does not dispute her signature and she admitted this in the 2019 deposition. (ECF No. 22-1 at 20:18-20).

34. At that deposition, an attorney showed Espinal a copy of the injunction and summarized its contents to her. (*Id.* at 20:23–21:7).

35. At the hearing, two of the witnesses testified that in the following year, 2020, Espinal prepared their 2019 tax returns. Tr. at 61:15-17, 172:1-2.

36. The Court finds that Espinal's "ghost" preparation is further evidence of her knowledge of the injunction. Espinal's failure to identify herself as the paid return preparer strongly suggests her awareness of the impropriety of preparing others' tax returns.

37. Espinal has not denied that she knew of the injunction. She asserts her Fifth Amendment right against self-incrimination when asked if she was aware of the injunction, and in response to all questions regarding her preparation of tax returns. (ECF No. 35). In her response memorandum, she suggests that even if she had notice of the injunction, she did not understand its contents because she speaks Spanish, and the injunction is in English. (ECF No. 11 at 2).

38. Espinal has sufficient English proficiency to understand the injunction.[5]

---

[5] As discussed in the conclusions of law below, even if Espinal did not understand the injunction because it was written in English, it is not a defense for her refusal to obey it. *See infra* ¶ 57.

39. The Court credits the following statement from Espinal at the 2019 deposition:

> Q. Do you read fluent English?
> A. Yes. I read it.
> Q. Are you fluent in writing English?
> A. Not much. But I understand it, more or less.

(ECF No. 22-1 at 106:18-23).

40. The Court also credits the testimony of one of the witnesses, that she personally saw Espinal communicating with Espinal's grandson in English. Tr. at 21:2-9.

41. Moreover, Espinal testified at the 2019 deposition that she is a notary, which means she is legally required "to be able to read, write, and understand the English language." Fla. Stat. § 117.01(1); *see also* (ECF No. 22-1 at 22:6–23:5). Of course, federal income tax returns are written in English.

### C. Espinal prepared multiple returns with fraudulent claims

42. The returns Espinal prepared have multiple fraudulent claims. In addition to the fraudulent fuel tax credits, the following table highlights **$269,095** in deductions that Defendant fabricated or overstated on returns she prepared.

| Customer | Tax Year | Type of Bogus Claim | Citation to Tax Return or Return Transcript | Citation to Hearing Testimony | Amount of Bogus/Inflated Deductions |
|---|---|---|---|---|---|
| Jean Albert Gallego | 2017 | Business loss | ECF No. 22-10 at 19, 22. | Tr. at 125:15-20. | $9,694 |
|  | 2017 | Medical and dental expenses | ECF No. 22-10 at 21. | Tr. at 124:9-13. | $9,765 |

11

|  | 2017 | Charitable donations | ECF No. 22-10 at 21. | Tr. at 124:14-18. | $750 |
|---|---|---|---|---|---|
|  | 2017 | Other business expenses | ECF No. 22-10 at 21, 28. | Tr at 124:19–125:14. | $9,717 |
|  | 2018 | Business loss | ECF No. 22-10 at 33, 36. | Tr. at 120:23–121:6. | $9,268 |
|  | 2018 | Medical and dental expenses | ECF No. 22-10 at 35. | Tr. at 119:6-17. | $13,889 |
|  | 2018 | Charitable donations | ECF No. 22-10 at 35. | Tr. at 119:18–120:9. | $750 |
|  | 2018 | Impairment-related work expenses | ECF No. 22-10 at 35. | Tr. at 120:11-22. | $21,240 |
| Olaf Pozo Lorenzo | 2017 | Charitable donations | ECF No. 22-23 at 5. | Tr. at 44:5–45:5. | $750 |
|  | 2017 | Medical and dental expenses | ECF No. 22-23 at 5. | Tr. at 43:2-16. | $8,999 |
|  | 2017 | Unreimbursed employee expenses | ECF No. 22-23 at 5, 6. | Tr. at 45:6-16. | $7,553 |
| Carlos Silveira Mendoza | 2018 | Business loss | ECF No. 22-25 at 5, 6. | Tr. at 175:11–177:7. | $8,682 |
|  | 2019 | Business loss | ECF No. 22-25 at 11, 12. | Tr. at 177:24–179:3. | $8,778 |
| Francisco Flores | 2018 | Medical and dental expenses | ECF No. 22-26 at 5. | Tr. at 64:6-14. | $13,988 |
|  | 2018 | Charitable donations | ECF No. 22-26 at 5, 6. | Tr. at 65:1-18. | $750 |
|  | 2018 | Other miscellaneous expenses | ECF No. 22-26 at 6. | Tr. at 65:19-25. | $24,285 |

|  | 2019 | Medical and dental expenses | ECF No. 22-26 at 11. | Tr. at 66:18-24. | $6,507 |
|---|---|---|---|---|---|
|  | 2019 | Charitable donations | ECF No. 22-26 at 12. | Tr. at 67:12-20. | $250 |
|  | 2019 | Other miscellaneous expenses | ECF No. 22-26 at 12. | Tr. at 67:21–68:5. | $22,286 |
|  | 2019 | Business loss | ECF No. 22-26 at 12, 13. | Tr. at 68:6–69:10. | $7,820 |
| Gueidy Antigua | 2018 | Medical and dental expenses | ECF No. 22-33 at 5. | Tr. at 99:1-9. | $14,415 |
|  | 2018 | Other miscellaneous expenses | ECF No. 22-33 at 6. | Tr. at 99:10-18. | $22,184 |
| Naeleen Rosario | 2018 | Medical and dental expenses | ECF No. 22-34 at 5. | Tr. at 87:17–88:11. | $18,524 |
| Angie Amaya | 2018 | Other miscellaneous deductions | ECF No. 22-37 at 6. | Tr. at 23:23–25:7. | $16,597 |
|  | 2018 | Medical and dental expenses | ECF No. 22-37 at 5. | Tr. at 23:12-22. | $11,654 |
|  |  |  |  |  | **Total: $269,095** |

## II. Conclusions of Law

43. The power to find a person in civil contempt stems from the Court's inherent authority to enforce compliance with its lawful orders. *Citronelle–Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991).

44. "A civil contempt proceeding can be viewed as a three-step process that shifts the burden of production but always leaves the burden of persuasion with the moving party." *In re Bilzerian*, 276 B.R. 285, 299 (M.D. Fla. 2002).

45. "A party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order." *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992) (citations omitted).

46. Whether the contemnor intended to violate the injunction is irrelevant. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). "[T]he focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990). Once the movant makes a *prima facie* showing of a violation, the burden of production shifts to the alleged contemnor, who must show either that she did not violate the court order, or that she is excused from complying with it. *Id.*; *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998). A contemnor may be excused from compliance with proof of her inability to comply. *Commodity Futures Trading Comm'n*, 950 F.2d at 1529; *Combs v. Ryan's Coal Co. Inc.*, 785 F.2d 970, 984 (11th Cir. 1986).

47. If the alleged contemnor satisfies this burden of production, the burden shifts back to the movant to prove liability. *Commodity Futures Trading Comm'n*, 950 F.2d at 1529.

48. It is clear then, that although the burden of production shifts, the party seeking contempt bears the ultimate burden of proof, by clear and convincing evidence, that the defendant has violated a court order. This proof must include that "1) the allegedly violated order was valid and lawful; 2) the order was clear, definite and unambiguous; and 3) the alleged violator had the ability to comply with the order." *Jordan v. Wilson*, 851 F.2d 1290, 1292 n.2 (11th Cir. 1988) (citation omitted); *Ga. Power Co. v. Nat'l Labor Relations Bd.*, 484 F.3d 1288, 1291 (11th Cir. 2007) (citations omitted).

49. Espinal does not dispute that the injunction was valid and lawful, clear, and unambiguous, and that she had the ability to comply with it. Tr. at 191:15-24. Rather, she disputes that she had notice of the injunction and that she acted in violation of it. *Id.* at 191:25-192:8.

50. Federal Rule of Civil Procedure 65(d)(2) provides that a party is bound by an injunction when that party receives actual notice of it by personal service or otherwise.

51. The United States has met its burden of proof by clear and convincing evidence that Espinal was aware of, and violated, the injunction.

52. Espinal signed the 2011 injunction, and in a 2019 deposition, she acknowledged that signature as hers.

53. Espinal's conduct also demonstrates notice of the injunction. "Circumstantial evidence establishing actual knowledge may be derived from the parties' relationship, concert of action in maintenance of the unlawful business, and the obvious interest of the defendants in evading any interference with their unlawful business as long as possible." *FTC v. Neiswonger*, 494 F. Supp. 2d 1067, 1079 (E.D. Mo. 2007) (internal quotation marks

omitted), *aff'd*, 580 F.3d 769 (8th Cir. 2009); *see also United States v. Planes*, No. 8:18-cv-2726, ECF No. 202 at 23 (M.D. Fla. July 11, 2019). Espinal's "ghost" preparation of tax returns is powerful circumstantial evidence of her deliberate concealment, from the IRS, of her unlawful conduct.

54. There is clear and convincing evidence that Espinal violated the injunction. Ten witnesses credibly testified that Espinal prepared their tax returns after she was enjoined. Additionally, after an attorney reviewed the injunction with her at the 2019 deposition, she continued to prepare returns. Specifically, witnesses testified that in 2020, Espinal prepared their 2019 tax returns.

55. The United States met its initial burden to show Espinal had actual knowledge of and violated the Court's order. The burden then shifted to Espinal to show either that no violation occurred or that compliance was impossible. *Marine Turbo Ltd. v. Turbocharger Servs. Worldwide, LLC*, No. 11-60621-CIV-Martinez-McAliley, ECF No. 449 at 5 (S.D. Fla. Aug. 22, 2013). For the latter defense, the "alleged contemnor must go beyond a mere assertion of inability and establish that [s]he has made in good faith all reasonable efforts to meet the terms of the court order [s]he is seeking to avoid." *Wellington Precious Metals*, 950 F.2d at 1529 (internal quotation marks and citation omitted); *see also Combs*, 785 F.2d at 984 ("We construe this requirement strictly. Even if the efforts [s]he did make were substantial, diligent or in good faith . . . the fact that [s]he did not make all reasonable efforts establishes that [respondent] did not sufficiently rebut the . . . prima facie showing of contempt. The . . . use of a 'some effort' standard for measuring the strength

of [the] defense [would be] an abuse of discretion.") (internal quotation marks omitted) (alterations and ellipses in original).

56. Espinal offers no evidence that contradicts the witnesses' testimony. Instead, she asserts her Fifth Amendment right against self-incrimination. The Court draws an adverse inference from this that she prepared their returns and that she did so in violation of the Court's injunction. *See, e.g.*, *FTC v. Pointbreak Media, LLC*, 376 F. Supp. 3d 1257, 1275 (S.D. Fla. 2019); *State Farm Mut. Auto. Ins. Co. v. Filenger*, 362 F. Supp. 3d 1246, 1255 (S.D. Fla. 2018); *Arango v. United States Dep't of the Treasury*, 115 F.3d 922, 926 (11th Cir. 1997) (noting that the Fifth Amendment does not forbid adverse inferences against civil litigants).

57. Espinal argues that she was unable to comprehend the injunction because of her purported inability to understand enough English. The United States has demonstrated by clear and convincing evidence that Espinal does, in fact, have sufficient English proficiency to understand the injunction. The tax returns she prepared were in English, a witness overheard her speaking English to her grandson, and she admitted at the 2019 deposition that she is a notary and can fluently read English. Additionally, even if Espinal has difficulty understanding English, that argument is not persuasive. *See Century ML-Cable Corp. v. Carrillo*, 43 F. Supp. 2d 176, 181 n.7 (D.P.R. 1998) ("Moreover, even if Carrillo was unable to understand the [temporary restraining order], as it was written in English, this would not furnish a defense to his refusal to obey it."); *see also Toure v. United States*, 24 F.3d 444, 445–46 (2d Cir. 1994). Thus, Espinal's purported defense is both factually and legally deficient.

17

58. For the foregoing reasons, the Court finds Espinal in contempt of the 2011 injunction and, to that extent, **GRANTS** the United States' Motion, (ECF No. 22). Because the parties agreed to bifurcate the issues of liability and sanctions, the Court will decide at a later date appropriate sanctions.

DONE AND ORDERED in Miami, Florida, this 18th day of August 2021.

_____
CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of record