UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20418-CIV-MCALILEY
(CONSENT CASE)

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MILAGROS ESPINAL,

    Defendant.
_____/

## ORDER GRANTING THE UNITED STATES' MOTION FOR SANCTIONS

In February 2011, this Court entered a Consent Judgment of Permanent Injunction, signed by both government counsel and Defendant, Milagros Espinal. (ECF No. 3). That injunction prohibited Defendant from, *inter alia*, preparing any other person's federal income tax returns. (*Id.*).

In March 2021, the United States filed a motion to find Defendant in contempt of that injunction, for her preparation of thousands of fraudulent tax returns, in the years 2017 through 2020. (ECF No. 22). With the agreement of the parties, the Court bifurcated its adjudication of liability and possible penalties. *See* (Order, ECF No. 50 at 1).

In April 2021, the Court held an evidentiary hearing on liability. *See* (Corrected Transcript, ECF No. 47). For reasons stated at that hearing and in the Order the Court issued after the hearing, the Court found that the government carried its burden to prove that Defendant is in contempt of the injunction. *See generally* (*id.* at 191:8-12, 196:4-17,

200:15-21, 202:12-14); (Order, ECF No. 50). The Court thereafter entered a Scheduling Order that set deadlines for discovery and briefing by both parties, regarding the government's request that the Court sanction Defendant. (ECF No. 45).

Consistent with that Order, the government filed a Motion for Imposition of Sanctions (the "Motion"). (ECF No. 48). In its Motion, the government asks the Court to order Defendant to pay to the United States, within 30 days from the date of this Order, the following: (i) $395,280.00 in disgorgement of her ill-gotten gains, and (ii) $8,689.70 in costs. (*Id.* at 18).

Defendant has not filed a response to the government's Motion and the deadline to do so has long since passed. For the reasons that follow, the Court **GRANTS** the government's Motion.

## I.     Disgorgement

This is a civil contempt action, and this Court has "wide discretion to fashion an equitable remedy for contempt that is appropriate to the circumstances." *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1515 (11th Cir. 1987). "The purposes of civil contempt sanctions are to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Id.* (quotation marks and citations omitted). The Eleventh Circuit Court of Appeals has found that trial courts may order disgorgement as a sanction for contempt. *FTC v. Leshin*, 618 F.3d 1221, 1237 (11th Cir. 2010). Disgorgement is "an equitable remedy intended to prevent unjust enrichment from ill-gotten gains …." *U.S. CFTC v. Tayeh*, 848 F. App'x 827, 828 (11th Cir. 2021) (citation

omitted). "It extends only to the amount the defendant profited from [her] wrongdoing." *United States v. Stinson*, 729 F. App'x 891, 899 (11th Cir. 2018) (citation omitted).

The government is entitled to disgorgement of an amount that is a "reasonable approximation" of Defendant's ill-gotten gains. *Id.* (citation omitted). "Exactitude is not a requirement; so long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *SEC v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004) (quotation marks and citation omitted). If the government provides a reasonable approximation, the burden then shifts to Defendant to disprove that amount. *Stinson*, 729 F. App'x at 899 (citation omitted).

The Court has carefully reviewed the government's Motion and finds the government has demonstrated that $395,280.00 is a reasonable approximation of Defendant's ill-gotten gains.[1] The Court summarizes below the government's calculation of that amount – specifically, its method of extrapolation, which is informed by the manner in which Defendant engaged in the preparation of tax returns, post-injunction.[2]

---

[1] The Court considers here the government's substantial evidence, which includes the attachments to its Motion – affidavits, discovery requests and responses, financial records, and documents regarding Defendant's purchase of real estate – and the documents and testimony the Court received at the April 2021 evidentiary hearing. *See* (Attachments to Motion for Contempt, ECF Nos. 22-1 through 22-42); (Stipulation, ECF No. 27); (Corrected Transcript, ECF No. 47); (Attachments to Motion for Imposition of Sanctions, ECF Nos. 48-1 through 48-22).

[2] "Extrapolation is often used ... when the number of tax returns under review is too large for a practicable and effective analysis. *Black's Law Dictionary* defines extrapolation as the process of estimating an unknown value or quantity on the basis of the known range of variables." *United States v. Johnson*, 841 F.3d 299, 304 n.1 (5th Cir. 2016) (quotation marks and citation omitted).

First, the government isolated all tax returns for calendar years 2017 through 2020, that met the following criteria: 1) the taxpayer listed a Florida address;[3] 2) the return was submitted by regular mail;[4] 3) the return did not identify a paid return preparer;[5] and 4) the return claimed a fuel tax credit of exactly $1,096.[6] (ECF No. 48 at 3). A total of 7,243 returns met those criteria. (*Id.*).

The government interviewed 29 taxpayers from the list of the 7,243 returns. (*Id.* at 4). Twenty-two identified Defendant as their return preparer, which yields a 75.9% positivity rate. (*Id.*). As explained below, the government later used that figure to reduce the number of returns considered in the disgorgement analysis.

Next, the government excluded 660 returns from the initial number of 7,243. The returns it excluded were from people who lived more than 30 miles outside of Hialeah, Florida. (*Id.*). The government did so to give Defendant the benefit of the doubt, focusing only on returns filed from people who lived within 30 miles of where Defendant worked. (*Id.*).

---

[3] Defendant was operating in Hialeah, Miami-Dade County, Florida.

[4] Defendant directed her customers to mail their returns to the Internal Revenue Service.

[5] Defendant did not sign the returns she prepared.

[6] For a great number of the returns that she prepared for her customers, Defendant falsely claimed that they purchased exactly 5,988 gallons of fuel for a qualifying off-highway purpose, which resulted in a fuel tax credit of $1,096. In fact, Defendant claimed that same amount on her own personal returns.

This was not the only figure she used to make false fuel tax credit claims. At the April 2021 evidentiary hearing, there was evidence that some returns she prepared had claims of 6,988 gallons of fuel. The government, however, limited its calculation here to returns claiming 5,988 gallons. (ECF No. 48 at 11).

The government also excluded an additional 72 returns because the Internal Revenue Service ("IRS") received those after the government began to take depositions to investigate Defendant's conduct. (*Id.* at 4-5). That is, the government assumed, in Defendant's favor, that she stopped preparing tax returns once the IRS discovered her conduct. (*Id.*).

These exclusions led to a total dataset of 6,511 returns (7,243 – 660 – 72 = 6,511). The government applied the 75.9% positivity rate to that amount, to reach a final number of 4,941, as a reasonable approximation of returns Defendant prepared in violation of the injunction. (*Id.* at 5).

Defendant charged customers between $80 and $100 for the preparation of each return. (*Id.*). The government took the lower number, $80, and multiplied it by 4,941, to reach the total disgorgement figure: $395,280.00. (*Id.*).

This Circuit has approved of the use of extrapolation to calculate a reasonable approximation of a defendant's ill-gotten gains. *See Stinson*, 729 F. App'x at 899 ("As we have held, a trial court may extrapolate from available evidence, and such extrapolation may occur without interviewing every customer and preparer for every allegedly false or fraudulent return."). Other Circuits do as well. *See, e.g.*, *United States v. Johnson*, 841 F.3d 299, 303-05 (5th Cir. 2016) (affirming district court's adoption of the government's total loss calculation, which was an extrapolation from a sample size of 41 tax returns out of 6,727); *United States v. Ukwu*, 546 F. App'x 305, 308-09 (4th Cir. 2013) (overruling the defendant's objection to the government's use of a sample size of 24 returns to extrapolate from a dataset of 1,000).

The government's argument in its Motion, which it supports with evidence, persuades this Court that the calculation it used provides a reasonable approximation of Defendant's ill-gotten gains. *See* (ECF No. 48 at 6-18). Although "a larger sample size is preferable," the sample the government used here is sufficient to find a reasonable approximation. *Ukwu*, 546 F. App'x at 308; *id.* at 309 ("As any chef or statistician can attest, even a small spoonful of sauce [out of the pot] can indicate how much salt to add."). For the reasons the government stated in its Motion, the Court finds that Defendant's disgorgement of $395,280.00 compensates, at least in part, the United States Treasury, for losses Defendant caused it. *See* (ECF No. 48 at 17-18). Thus, disgorgement here satisfies the purpose of civil contempt to "compensate the complainant for the losses sustained." *Guardian Pools*, 828 F.2d at 1515.

Defendant provides no evidence – or argument – to rebut the government's calculation and therefore fails to meet her burden of proof to disprove the government's approximation. *Stinson*, 729 F. App'x at 899. The Court thus adopts the government's calculation.

## II. Costs

The government also seeks as a sanction for Defendant's contempt, the recovery of its out-of-pocket costs prosecuting the contempt; a total of $8,689.70. (ECF No. 48 at 6, 18). The government provided invoices to the Court for each fee. (ECF No. 48-22). The total amount covers costs of $7,914.70 in court reporter and interpreter fees, and $775 for service of process fees for depositions and hearings. (*Id.*).

Courts in this Circuit have ordered defendants to pay costs as a sanction for contempt. *See United States v. Harvey*, No. 8:20-cv-60, ECF No. 42 at 3 (M.D. Fla. Mar. 17, 2020) (ordering reimbursement of travel costs); *United States v. Cotton*, No. 9:17-cv-80518, ECF No. 83 at 21 (S.D. Fla. Aug. 15, 2019) (ordering reimbursement of airline, hotel, process server, and court reporter costs). The Court sees no reason – and Defendant offers none – why it should not impose costs here. The Court therefore grants the government's request.

### III. Conclusion

For these reasons, the Court **GRANTS** the United States' Motion for Imposition of Sanctions against Defendant, in the total amount of **$403,969.70**. (ECF No. 48). Defendant shall pay that amount to the United States **no later than 30 days** from the date of this Order.

DONE AND ORDERED in Miami, Florida, this 29th day of September 2021.

_____
CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of record